**ALUMINUM ORE CO. v. NATIONAL LA-
BOR RELATIONS BOARD.**

No. 7995.

Circuit Court of Appeals, Seventh Circuit.
Nov. 30, 1942.

Bruce A. Campbell, of East St. Louis, Ill., and Frank B. Ingersoll, of Pittsburgh, Pa. (Kramer, Campbell, Costello & Wiechert, of East St. Louis, Ill., Smith, Buchanan & Ingersoll, of Pittsburgh, Pa., of counsel), for petitioner.

Robert B. Watts and Ernest A. Gross, General Counsel National Labor Relations Board, Gerhard P. Van Arkel, Asst. General Counsel, and Frank J. Donner and Robert E. Mullin, all of Washington, D. C., and L. N. D. Wells, Jr., of St. Louis, Mo., for respondent.

Joseph A. Padway and Herbert S. Thatcher, both of Washington, D. C., for Intervenor.

Before SPARKS, and MINTON, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

This review involves the validity of an order of the National Labor Relations Board which petitioner seeks to have vacated and the Board, to have enforced. The complaint charged that, in a labor controversy between a union of its employees and petitioner, the latter "engaged in unfair labor practices" in that it refused to bargain collectively because it (1) "refused to make counterproposals"; (2) "by unilateral action took certain action as to wage increases although the union had requested collective bargaining concerning said matter" and (3) "withheld from said union, information as to pay rates which was necessary and basic to collective bargaining."

The issue raised by the complaint and answer was as to the truth of these specific averments and the evidence submitted bore only upon that issue. Consequently we are confronted with the narrow question of whether petitioner, in its negotiations with the union, acted unilaterally and refused to furnish information it was bound, under the intent and purport of the act, to supply, thereby avoiding collective bargaining.

The relationship between petitioner and the union had been at all times serene and friendly. The employer had readily recognized the union as the authorized representative of its employees. It co-operated freely in various conferences in attempts to reach a satisfactory understanding. It bargained from time to time both before and after the complaint was filed. To nothing that occurred in these transactions is objection made, except that, in their course, a situation ultimately arose wherein petitioner claimed that any increase in wages should be determined by consideration of the individual members of the several separate groups included in the union, group by group. Quite reasonably, and with every indication of honest belief in justification of its position, it argued that, in view of its past record of increases, a flat horizontal increase to all members of the union in the same proportions or same amounts would work inequities, as the wages of some of the men had been raised comparatively recently and those of others had not. At first the union had insisted that its members be treated as a whole and that only a flat increase affecting any and all members in the same amount would furnish the proper standard. Thus, while the parties continued their negotiations, they reached an apparent impasse as to the proper approach to a solution of the issue between them. However, as the issue raised its head, near the end of the conferences, the union receded from its earlier position and announced that it would be willing to bargain upon the basis of consideration of the respective groups.[1]

At this stage, it would have seemed and indeed it did seem to some of the interested

[1] This controversy as to groups arose from the fact that the union was made up of employees performing different kinds of work. They included office and clerical workers, metermen, leadman, routine chemists, chemists' assistants, and dust, gas, and laboratory technicians employed by the company. The wide range in character of labor performed by the different groups led to difficulty in considering all employees as a single unit and was largely responsible for the disagreement between the parties as to the basis for bargaining.

parties that petitioner and its employees had met on a sound agreed basis for final bargaining. Unfortunately, however, the course of events thereafter changed. Petitioner, having this far bargained and conferred, declared that it would determine for itself what the wages and rates of pay should be, as it had for many years; that it was then making certain increases, (of which it advised the union); that these would stand until and unless there should be objection by any individual member and that, in such case, petitioner would permit any aggrieved person to present his complaint either personally or through the union. Thus, upon the apparent verge of complete successful bargaining, the company insisted upon following the plan it had pursued in the past of not bargaining but of fixing increases ex parte, leaving to hearings of future grievances, determination of whether any adjustment was justified. This attitude, manifestly, petitioner believed conformed with its statutory duty.

But, to our minds, this was not the collective bargaining required by the act. It was not the giving and taking in open discussion and negotiation contemplated by Congress. Rather it was reversion to the procedure of the past upon the part of the employer effectuating removal of bargaining concerning the exact subject matter at issue. By the employer's act, the union was thereafter excluded from bargaining in determining what the increases should be. Thereafter, it was to have no voice in such decision, for determination of all increases was reserved to the exclusive jurisdiction of petitioner subject only to a provision for the hearing of future individual grievances. Though the past relationship may have been satisfactory; though the system had been in force for some 40 years with resultant peaceful and friendly relationship between employer and employees, petitioner was confronted with requirements of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., to desist from such method of procedure and to inaugurate, in lieu of it, round table bargaining upon the subject of wage increases. This contemplates exchange of information, ideas and theories in open discussion and an honest attempt to arrive at an agreement. The method adopted by petitioner ignored this standard of conduct and amounted in its essence to a statement that "we shall determine the increases and they will stand as what we are willing to do,

subject only to the right of individuals to present grievances." We think the evidence justifies the finding of the Board that the employment of unilateral procedure, under the circumstances presented, was not within the spirit or contemplation· of the act.

It appears further that when the union expressed willingness to bargain upon the basis suggested by petitioner, namely, that of related groups, and when petitioner announced certain increases, the union requested that it be supplied with the information contained in petitioner's records of employment, in order that it might have a complete picture of the wage history of the various group-members to whom increases were granted. This, petitioner said, was confidential.

Again we do not believe that it was the intent of Congress in this legislation that, in the collective bargaining prescribed, the union, as representative of the employees, should be deprived of the pertinent facts constituting the wage history of its members. We can conceive of no justification for a claim that such information is confidential. Rather it seems to go to the very root of the facts upon which the merits were to be resolved. In determining what employees should receive increases and in what amounts, it could have been only helpful to have before the bargainers the wage history of the various employees, including full information as to the work done by the respective employees and as to their respective wages in the past, their respective increases from time to time and all other facts bearing upon what constituted fair wages and fair increases. And if there be any reasonable basis for the contention that this may have been confidential data of the employer before the passage of the Act, it seems to us it cannot be so held in the face of the expressed social and economic purposes of the statute. Petitioner announced the increases it would be willing to make but it refused to supply the wage history. From this refusal, we think the Board was justified in concluding that petitioner had failed to co-operate wholeheartedly in collective bargaining.

We are not satisfied, however, with the order. We have seen how narrow was the issue presented to the Board, yet that body directed petitioner to cease and desist from refusing to bargain and then added "And from engaging in any like or re-

lated acts or conduct interfering with, restraining, or coercing its employees in the exercise of the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, as guaranteed in Section 7 of the Act."

■■ The complaint was specific,—employment of unilateral action and refusal to divulge wage history. No "like or related acts" were complained of. Indeed, the relationship between employer and employee was friendly; each evidently thought the conduct of the other beyond reproach in all save this specific particular. Petitioner was endeavoring to comply with the act; it was wrong in its conception of its duty. Where it appears, as here, that the acts complained of were not malicious but inspired by a mistaken idea upon the part of employer as to what it should or might do in order to comply with the spirit of the act and there was an absolute absence of evidence of any probability or tendency to commit "like" offenses or of inclination to do other than to endeavor to abide by the act, we think the Board wholly unjustified in entering an injunction against things unthought of, unheard of and unsuggested. This we think is in accord with the announcement of the Supreme Court. National Labor Relations Board v. Express Publishing Company, 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930; Singer Mfg. Co. v. N. L. R. B., 7 Cir., 119 F.2d 131.

■ The union has asked leave to intervene. This proceeding is in the public interest, prosecuted by an authorized agency of the Government, in furtherance of an express policy and intent upon the part of Congress to establish, in behalf of the national public, a standard of conduct presumably productive of progress in protection of the public welfare. In such proceedings, private parties have no rightful place except as the court may desire to avail itself of helpful suggestions. Seeing no such necessity in this proceeding, we deny the application.

The petition to vacate is denied. The order is modified to include a cease and desist order as to the two practices complained of and by eliminating therefrom, the direction to cease and desist as to any other act, and as modified, enforced.