## NATIONAL LABOR RELATIONS BOARD v. J. H. ALLISON & CO.

### No. 10411.

Circuit Court of Appeals, Sixth Circuit.

Jan. 26, 1948.

SIMONS, Circuit Judge, dissenting.

———◆———

Jack G. Evans, of Washington, D. C. (A. Norman Somers and Marcel Mallet-

Prevost, both of Washington, D. C., on the brief), for petitioner.

Jac Chambliss, of Chattanooga, Tenn. (Chambliss, Chambliss & Brown, of Chattanooga, Tenn., on the brief), for respondent.

Before SIMONS, ALLEN and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

The National Labor Relations Board ordered the respondent, J. H. Allison & Company, a Tennessee corporation doing business in Chattanooga, Tennessee, to cease and desist from refusing to bargain collectively concerning so-called "merit wage increases" with a labor union (affiliated with the American Federation of Labor), as exclusive representative and bargaining agent of its production workers; and to grant no merit wage increases to such employees "without prior consultation with the Union."

Respondent was affirmatively ordered to bargain collectively with the union regarding merit wage increases; and, upon request, to furnish the union "full information with respect to merit wage increases, including the number of such increases, the amount of such increases, and the standards employed in arriving at such increases." The customary directions as to notice-posting and notification of the Regional Director were given. This court is petitioned to enter a decree enforcing the Board's order in entirety. Respondent vigorously opposes the petition.

The Labor Board agreed with the Trial Examiner that respondent had violated section 8(5) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 158 (5); affirmed his rulings; and substantially adopted his findings, conclusions and recommendations.

The material facts are not in dispute. The respondent company for approximately five years had dealt with the union and had executed exclusive bargaining contracts with it as representative of the employees. At the time of the occurrences during 1945 upon which the complaint is based, one of these annual agreements, dated January

7, 1945, was in effect. This contract provided for a minimum wage scale; but no provision was made therein for merit increases. Indeed, the subject was not mentioned in the signed agreement. A few months after the execution of this contract, the company, in conformity with its past practice, gave some thirty-one, out of a total number of from one hundred and five to one hundred and fifteen, of its employees wage increases. Upon learning this, an official representative of the union requested respondent on May 2, 1945, to furnish the union with a list of the names of the employees who had received increased pay, together with the amount of the raise granted each. He stated that such information was necessary as a basis for further collective bargaining negotiations on wage rates. Respondent refused to divulge the desired information, and was likewise adamant to similar later requests from the union. The reasons given by the company for rejection were that merit wage increases are not proper subject matter for collective bargaining, but fall within exclusively managerial function; and that the union could obtain from its own membership the information which it sought.

In his testimony before the Trial Examiner, Vice President McCall frankly stated the company's position, thus: "We feel that the granting of these individual merit increases is a matter that is determined on the basis of an individual's performance, and that the Union is not involved in that, as a negotiated increase; that is, it isn't collective bargaining; that the fact that it is based on merit removes it from a bargaining and a negotiation, which indicates that it is something that is discussed and compromised, perhaps; but we have felt that an individual merit increase is a reward for increased production or skill, and that that has always been our policy to recognize that whenever we could, when we felt it was justified. * * * We think that it is not the function of the—the proper function of the Union under our contract to discuss individual merit increases."

Upon substantial evidence, the Labor Board found that during negotiations for 1946, the ensuing year, the union requested respondent to include in the contract a clause concerning the union's rights with respect to merit increases and other changes in wages, but that respondent "presumably adhering to its previously announced position that merit increases are not a bargainable issue," refused the request of the union, which "then dropped its request stating that the matter would probably be settled in the proceedings which it had instituted before the Board."

In its decision, the Board expressed concurrence in the Trial Examiner's conclusion that the respondent had not fulfilled its obligation to bargain collectively with the union. No merit was found in the company's contention that merit increases are a prerogative of management; but they were deemed by the Board "an integral part of the wage structure" and, as such, a proper subject for collective bargaining. The refusal of respondent, during the formulation of the 1946 contract, to negotiate with the union concerning merit wage increases and to furnish information upon the subject so that the union could adequately represent the employees, was declared to be the basis of the Board's finding that respondent had refused to bargain within the meaning of section 8(5) of the Act.

One member of the Labor Board dissented. He expressed accord with his colleagues "that merit increases are a proper subject of collective bargaining"; but considered sound the contention that "it was not incumbent upon respondent to disclose information concerning merit wage increases" when requested by the union to do so on May 2, 1945, inasmuch as the contract in effect on that date contained a minimum wage scale but was silent as to maximum wages. He pointed out that the parties had reached an agreement for a definite period of time and that "the Act does not require an employer to furnish information upon which it has based certain merit increases, not in violation of the provisions of the existing contract, after only 4 months of the contract year have elapsed."

The minority Board member stated further: "I believe it is unwise, granting that maximum as well as minimum wages are

bargainable subjects, to hold that the respondent company refused to bargain in the negotiations for the new agreement. The findings of the Trial Examiner which are not in dispute reveal that the respondent and the Union, as a result of these negotiations, reached an understanding which was embodied in a collective agreement for an additional year. There is no obligation under section 8(5) for an employer to agree to anything. Consequently, it cannot be said that an employer failed in his duty under the Act when he 'traded off' a demand on one issue for a substantial concession on another. Had the parties reached an impasse, then we would have been confronted by quite another question."

We think the dissent does not meet the real issue. As to the unseasonableness of the demand on May 2, 1945, it should not be overlooked that, according to the record, the demand for the information was renewed later during the negotiations for the 1946 contract. Moreover, the constant position of respondent has been and now is that merit increases are not, under the National Labor Relations Act, a proper subject for collective bargaining; and that the company will not negotiate or bargain with the union upon the subject until "ordered so to do by final authority." This pat position of the employer necessitates the course pursued by the union to enforce the rights of its membership claimed under the Act. Nor do we see logical justification in the view that in entering into a collective bargaining agreement for a new year, even though the contract was silent upon a controverted matter, the union should be held to have waived any rights secured under the Act, including its right to have a say-so as to so-called merit increases. Such interpretation would seem to be disruptive rather than fostering in its effect upon collective bargaining, the national desideratum disclosed in the broad terms of the first section of the National Labor Relations Act, 29 U.S.C.A. § 151.

In its brief, respondent states its insistence that "the ex parte giving of merit increases does not come within the scope of collective bargaining in the absence of a provision in its contract to the contrary, and that under the existing contract and usage obtaining between the Company and the Union, the merit increases were not the subject of collective bargaining." Respondent asserts that the real and sole issue in the case is whether, under the existing contract and practice, it is necessary for respondent "to affirmatively bargain with the union with respect to merit increases." Respondent argues that it is common practice for employers to grant merit increases; and that, unless there is an express stipulation in the bargaining agreement to the contrary, the employer may at any time during the term of the contract give an individual employee a merit increase within "the network" of the wage scale negotiated between the employer and the union representing its employees as bargaining agent. It is pointed out that, should there be a charge of discrimination—which there is not in this case—the matter would fall within the ambit of grievance procedure.

In our judgment, the argument of the respondent will not stand. We think the logical deduction to be drawn from the opinions of the Supreme Court is that by virtue of the National Labor Relations Act the obligation of the employer to bargain collectively with representatives of its employees with respect to wages, hours and working conditions, includes the duty to bargain with such representatives concerning individual merit wage increases. The labeling of a wage increase as a gratuity does not obviate the fact that a gratuitous increase on the basis of merit does, in actuality, effectuate changes in rates of pay and wages, which are by the Act made the subject of collective bargaining.

In J. I. Case Co. v. National Labor Relations Board, 321 U.S. 332, 337-339, 64 S.Ct. 576, 580, 88 L.Ed. 762, the Supreme Court discusses generally the relation of individual contracts to collective bargaining, and declares that regardless of the circumstances justifying the execution of individual contracts the procedures prescribed by the National Labor Relations Act, looking to collective bargaining, may not by individual employment contracts be defeated or used to forestall collective bargaining or "to limit or condition the

terms of the collective agreement." It is pointed out that the very purpose of providing by statute for collective agreements is to supersede the terms of separate agreements of employees "with terms which reflect the strength and bargaining power and serve the welfare of the group." Replying to the argument that some employees may lose by the collective agreement, inasmuch as an individual worker may sometimes be capable of obtaining better terms of employment than those obtainable by groups and that accordingly his freedom of contract must be respected, the Supreme Court said: "The practice and philosophy of collective bargaining looks with suspicion on such individual advantages. Of course, where there is great variation in circumstances of employment or capacity of employees, it is possible for the collective bargain to prescribe only minimum rates or maximum hours or expressly to leave certain areas open to individual bargaining. But except as so provided, advantages to individuals may prove as disruptive of industrial peace as disadvantages. They are a fruitful way of interfering with organization and choice of representatives; *increased compensation, if individually deserved, is often earned at the cost of breaking down some other standard thought to be for the welfare of the group, and always creates the suspicion of being paid at the long-range expense of the group as a whole.* Such discriminations not infrequently amount to unfair labor practices. The workman is free, if he values his own bargaining position more than that of the group, to vote against representation; but the majority rules, and if it collectivizes the employment bargain, individual advantages or favors will generally in practice go in as a contribution to the collective result." [Italics supplied.]

On the same day that the opinion in the case just discussed was announced, the Supreme Court held, in Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 346, 347, 64 S.Ct. 582, 585, 88 L.Ed. 788, that the failure of a carrier to give notice to the bargaining representative of its employees of an intended change affecting rates of pay of certain individual employees constituted a violation of section 6 of the Railway Labor Act of 1926 (the 1934 Railway Act containing a similar provision), 48 Stat. 1197, 45 U.S.C.A. § 156. Mr. Justice Jackson, who also wrote the opinion in J. I. Case Co. v. National Labor Relations Board, supra, said: "From the first the position of labor with reference to the wage structure of an industry has been much like that of the carriers about rate structures. It is insisted that exceptional situations often have an importance to the whole because they introduce competitions and discriminations that are upsetting to the entire structure. Hence effective collective bargaining has been generally conceded to include the right of the representatives of the unit to be consulted and to bargain about the exceptional as well as the routine rates, rules, and working conditions. Collective bargains need not and do not always settle or embrace every exception. It may be agreed that particular situations are reserved for individual contracting, either completely or within prescribed limits. Had this proposed rate of pay been submitted to the collective bargaining process it might have been settled thereby or might have resulted in an agreement that the company should be free to negotiate with the agents severally. But the Company did not observe the right of the representatives of the whole unit to be notified and dealt with concerning a matter which from an employee's point of view may not be exceptional or which may provide a leverage for taking away other advantages of the collective contract."

In Medo Photo Supply Corp. v. National Labor Relations Board, 321 U.S. 678, 684, 64 S.Ct. 830, 88 L.Ed. 1007, Chief Justice Stone pointed to the two opinions which have been discussed, and to National Licorice Co. v. Labor Board, 309 U.S. 350, 359-361, 60 S.Ct. 569, 84 L.Ed. 799. He asserted that it is a violation of the essential principle of collective bargaining and an infringement of the National Labor Relations Act for the employer to disregard the bargaining representative of its employees by negotiating with them individually, with respect to wages, hours and working conditions.

We think that May Stores Co. v. Labor Board, 326 U.S. 376, 383, 384, 385, 66 S.Ct. 203, 209, 90 L.Ed. 145, bears close analogy in principle. In that case, the Supreme Court reasserted that the National Labor Relations Act makes it imperative upon the employer to bargain collectively only with the duly recognized or accredited representatives of employees, and declared that employer action to bring about changes in wage scales without consultation and negotiation with the certified representative of its employees cannot logically or realistically be distinguished from bargaining with individuals or minorities. The court considered that unilateral action by the employer in an application to the War Labor Board for authority to increase wages was not getting itself into position to negotiate with the bargaining agent of its employees. Mr. Justice Reed said: "Such unilateral action minimizes the influence of organized bargaining. It interferes with the right of self-organization by emphasizing to the employees that there is no necessity for a collective bargaining agent."

Even though the foregoing decisions of the Supreme Court do not hold directly that so-called merit increases are so closely identified with "rates of pay" as to be properly considered within the coverage of that phrase as used in the Act, we think that the discussion and reasoning in the cases leads to the conclusion that the union, as collective bargaining agent, may not be ignored by refusal of the employer to furnish information as to the basis of such increases, or the names of those receiving betterments in the wage scale and the amounts of the increased wages received by them.

Aluminum Ore Co. v. National Labor Relations Board, 7 Cir., 131 F.2d 485, 486, 487, 147 A.L.R. 1, is closely in point. There, the complaint was that the employer had taken unilateral action as to certain wage increases, and had withheld from the union "information as to pay rates which was necessary and basic to collective bargaining." There, as here, the relationship between the company and the union as recognized bargaining agent of its employees had been at all times serene and friendly. The employer and the union, from time to time both before and after the complaint was filed, had entered into collective bargaining agreements. Ultimately, the company insisted that any increase in wages should be determined by consideration of the individual members of several separate groups included in the union.

Quite reasonably and with honest belief in the justification of its position, the company argued that in view of its past record of increases, a flat horizontal increase to all members of the union in the same proportion or amounts would work inequities, as the wages of some of the men had been raised comparatively recently and those of others had not. The union insisted that its members be treated as a whole. While the negotiations were continuing, an apparent impasse was reached; but the union receded from its earlier position and announced its willingness to bargain upon the basis of consideration of the respective groups.

The company declared, however, that it would determine for itself what the wages and rates of pay should be, as it had done for many years; that it was making presently certain increases of which it had advised the union [as was not done by respondent in the instant case]; and that such increases would stand unless and until there should be objections by any individual member of the union, in which event the company would permit any aggrieved person to present his complaint, either personally or through the union.

The Court of Appeals held justifiable the finding of the Labor Board that the employment of unilateral procedure by the company was not within the spirit and contemplation of the Act. In enforcing the order of the board, with immaterial modifications insofar as the opinion is authoritative here, the court said: "In determining what employees should receive increases and in what amounts, it could have been only helpful to have before the bargainers the wage history of the various employees, including full information as to the work done by the respective employees and as to their respective wages in the past, their respective increases from time to time and all other facts bearing upon what constituted fair wages and fair increases.

\* \* \* Petitioner announced the increases it would be willing to make but it refused to supply the wage history. From this refusal, we think the Board was justified in concluding that petitioner had failed to co-operate wholeheartedly in collective bargaining."

The Aluminum Ore Co. case is not distinguished by the fact that, there, the employer insisted upon making *all* wage changes unilaterally, while the employer in the case at bar asserts the right to grant wage increases only to certain individuals of its own choice. In both cases, the insistence is upon impermissible unilateral company action as to wage increases.

For the reasons which have been indicated, a decree of enforcement of the order of the National Labor Relations Board will be entered as prayed in its petition to this court.

SIMONS, Circuit Judge (dissenting).

I regret that I am unable to concur in the views of my colleagues. Undoubtedly, an employer may not unilaterally bargain with respect to wages. J. I. Case Co. v. N. L. R. B., 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762; Order of Railroad Telegraphers v. Railway Express Agency, 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788; Medo Photo Supply Corp. v. N. L. R. B., 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007; May Department Stores Co. v. N. L. R. B., 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145. These decisions do not, however, reach the point whether merit increases are so closely identified with rates of pay that they should be considered within the meaning of that phrase as used in the Act. So much the opinion of the majority appears to concede. Merit increases as such are neither the result of negotiation nor contract. They differ from bonuses in that they are not applied generally to all employees, and so whether governed by contract or not are anticipated by employees as wages. Singer Manufacturing Co. v. N. L. R. B., 7 Cir., 119 F.2d 131, and the importance of such distinction was recognized by the National Labor Relations Board in Libby, McNeil & Libby, 65 N. L. R. B. 873, where it was held that the inauguration of an incentive plan by an employer is not per se an unfair labor practice unless there is proof that the increases were part of a plan to undermine the Union. In the instant case, there is no finding that the merit increases were in pursuance of such plan, no finding that they did, in fact, undermine the Union, no evidence to sustain such findings if they had been made, and the history of labor-management relations in the respondent's plant repels any inference that its merit increases had either such purpose or effect. Moreover, in an era when emphasis is laid upon production and ever more production as a check to inflationary processes, if not indeed as a cure for all other economic ills, it is difficult to accept the concept that gratuitous increases based upon zeal and ability and not in conflict with a collective bargaining agreement freely arrived at is an unfair labor practice. Nothing in the Act either expressly or by fair implication precludes recognition of individual merit.

Even upon the assumption that merit increases are properly the subject of collective bargaining, those involved do not constitute an unfair labor practice by refusal to bargain. The law compels bargaining. It does not and may not compel agreement. In the present case, the Union sought to bargain upon the subject of merit increases, but abandoned its demand and freely entered upon an agreement still in effect when the order was made which contained no reference to merit increases or maximum compensation. The Union should, as the employer must, stand by its bargain. The Allison Company was not guilty of an unfair labor practice and enforcement should be denied to the Board's order.