## NATIONAL LABOR RELATIONS BOARD v. CORSICANA COTTON MILLS.

### No. 12304.

United States Court of Appeals
Fifth Circuit.

Aug. 16, 1949.

See also 178 F.2d 347.

Frederick U. Reel, Attorney, Natl. Labor Relations Board, David P. Findling, Assoc. Gen. Counsel, Ruth Weyand, Acting Asst. Gen. Counsel, Washington, D. C., for petitioner.

John M. Scott, Fort Worth, Tex., for respondent.

Before HUTCHESON, SIBLEY and WALLER, Circuit Judges.

PER CURIAM.

Alleging that respondent was in contempt: (1) of paragraphs 1(a) and 2(a),[1] and (2) of paragraph 1(c)[2] of the enforcement decree entered in this cause on April 1, 1948, petitioner brought these proceedings for an order adjudicating that it was and requiring respondent, its officers and agents, to purge themselves of such contempt.

In support of the first charge, the petition presents a stenographic record of the bargaining conferences; in support of the second an affidavit of one Mims as to which there is a counter affidavit by one Ralph Elliott.

The first charge is in effect that the record of bargaining conferences shows that respondent had violated the requirement of the decree for recognition of the union by insisting that Article 1, the union recognition clause, contain a provision to the effect that non union employees should have a right to vote upon the provisions of the contract negotiated by the union as bargaining agent. In addition, it was charged that in respect to grievance procedure, wages, hours of employment and overtime pay, respondent had refused to bargain in good faith.

The second charge is in effect that, as shown by Mims' affidavit, the company in violation of the decree was interfering with its employees in respect to their union activities and attitude by spying and checking upon them.

The respondent, in its answer, flatly denies these charges of the board. As to the charge of interference with the union activities and attitudes of its employees, respondent insists that the charges made in Mims' affidavit are completely rebutted in that of Elliott, and the charge falls for want of proof.

As to the charge of failure to recognize the union by insisting in paragraph one on a provision for non union participation in union meetings, which deal with the terms of the contract, respondent insists: that this was not a failure or refusal to recognize the union; that on the contrary it recognized the union fully and made these requirements not in denial of recognition but for the purpose of keeping the peace between, and insuring justice to, both of its warring sets of employees, union and non union.

1. "(1) Cease and desist from:
   "(a) Refusing to bargain collectively with the [United Textile Workers, A. F. L.] Union or its representatives as the exclusive representative of all of its employees at its plant in the appropriate unit * * *;"
   "(2) Take the following affirmative action to effectuate the policies of the National Labor Relations Act, as amended:
   "(a) Upon request, bargain collectively with the United Textile Workers of America, Local No. 77, affiliated with the American Federation of Labor, as the exclusive representative of all of its mill

employees within the (appropriate) unit.
* * *"

2. "(1) Cease and desist from:
   * * * * * *
   "(c) In any other manner interfering with, restraining, or coercing its employees in the exercise of their right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activity for the purpose of collective bargaining or other mutual aid or protection as guaranteed in Section 7 of the National Labor Relations Act, as amended [29 U.S.C.A. § 157]."

As to the claim of refusal to bargain in good faith on the matters charged by the board, respondent as vigorously insists that the record does not support the charges.

In the board's brief, it is insisted as to the second charge, that Mims' affidavit is not rebutted but substantiated by Elliott's affidavit, and on the basis of the papers, the court might proceed to judgment. It is, however, in view of the primary importance of, and the condition of the record in, the first charge, the refusal to bargain aspect of this case "as to which no questions of fact are presented", further suggested that if the court disagrees with this view it should proceed with a determination now of the first charge, leaving the second charge for further inquiry, or, if unwilling to do this, it should treat the petition as presenting only the bargaining question, leaving the "Mims-Elliott incident" to such other proceedings as the board might see fit to institute.

▆ We have carefully examined the two affidavits and the record of the bargaining conferences. We are in no doubt that in the present state of the record, the second charge of contempt is not made out, and we take with regard to it the alternative course suggested by the board, giving it leave to drop this charge from the petition without prejudice to other proceedings with respect thereto.

▆ As to the charges under the first count, a careful consideration of the record of the several bargaining conferences convinces us that Roe, who was fully authorized to and did conduct the bargaining for the respondent, entered upon and conducted it throughout in complete good faith. It convinces us, too, that throughout the only intention he had was to secure for the company by the bargaining

such contract and only such contract as he believed the company was entitled to make under the law, as Roe understood it, taking into consideration the rights of company and employees, union and non union.

In short, we are in no doubt that if the provisions of our decree have been disobeyed or violated, such violation was not intended but has resulted from a mistaken view of what was permitted to the company under the law and not from a purpose to violate the law or our decree.

We particularly think it plain that the record leaves in no doubt that in making the requirements he made, including the one which was the rock upon which the attempts at bargaining really split,[3] Roe thought that the company was fully within its rights, indeed thought that it owed a duty to itself and to the non union employees to make this requirement, in view of the great friction between union and non union employees, to insure that the non union employees would be fairly dealt with by the union.

Neither are we at all in doubt that Roe, in respect to the other positions that he took in negotiating on the contract, in good faith believed, that he had the right to get for the company as good a contract as he could by compromise or otherwise, and that he was making no requests that he was not entitled to make.

This being so, we are bound to hold that the record furnishes no basis for a finding that respondent in respect of the matters charged was deliberately or knowingly in contempt of this court's decree and subject to punitive action because of what has gone on.

▆ This is not to say, however, that though taken in good faith, the positions

<hr />

3. "The Union agrees to act in the best interests of all employees, whether they belong to the Union or not, and without discrimination and under democratic procedures. All employees of the Company, whether they belong to the Union or not, shall be given the right to receive notice of Union meetings twenty-four hours in advance and to attend such Union meetings and to vote, and no decision of the Union as bargaining agent shall be determined except upon a majority vote of all of the employees who attend such a meeting. However, employees who do not belong to the Union shall not be entitled to attend Union meetings or to participate in the decision of Union affairs which do not relate to matters within the scope of collective bargaining."

were rightly taken or may be maintained. On the contrary, we are not in any doubt that Roe was mistaken in his view that he had a right to insert in the recognition paragraph the non union voting clause, nor that to the extent that he insisted on so doing, respondent withheld recognition from the union as bargaining agent, as ordered by our decree, and caused a rupture of the bargaining negotiations.

We are also of the opinion that Roe was wrong in not writing into the paragraph dealing with grievance procedure a provision for the presence of a union representative at the adjustment of grievances. The fact that Roe did agree with the union that it had this right under the law did not justify him in declining to write it into the contract.

As to the question of wages, hours, and overtime pay, we reserve judgment on this record until, with the rock of non union voting, on which the conference split, thus removed, the company and the union both negotiate in good faith, and with a spirit of conciliation, and a desire to get together, and have an opportunity to work out a fair and reasonable agreement.

In this connection we deem it appropriate to say that, except for those bargaining conferences in which Mr. Jacobs appeared as union representative, which were unduly attended with bitterness and acrimony, the conferences, especially those conducted by Mr. Ball, as union representative, were carried on with due recognition of the amenities, freedom from recrimination, and in an atmosphere which, but for the insistence on the non union voting, could have reasonably led to an agreement. If, therefore, the negotiations are taken up again by Mr. Ball or some other similarly fair minded negotiator for the union, and the company will negotiate in a like spirit of fairness and reason, we think there should be no difficulty in arriving at a reasonable agreement.

Deferring final action, therefore, upon the petition for contempt until there has been further opportunity for bargaining, and enjoining upon respondent and union to proceed in a spirit of moderation and fair play, we hereby direct the respondent to at once initiate a resumption of bargaining with the union in a sincere effort to reach an agreement, union and respondent to be afforded the assistance of the Labor Board when called upon by either or both, a record of the negotiations to be kept and reported to the court for final determination of the contempt proceedings at its next session at Fort Worth on November —, 1949, with the right of either party hereto to report progress or to apply to the court for further appropriate direction prior to said date.