## NATIONAL LABOR RELATIONS BOARD v. CORSICANA COTTON MILLS.
### No. 12304.

United States Court of Appeals
Fifth Circuit.

Dec. 9, 1949.

Frederick U. Reel, Attorney Nat. Labor Relations Board, David P. Findling, Assoc. Gen. Counsel, Ruth Weyand, Acting Asst. Gen. Counsel, Washington, D. C., for petitioner.

John M. Scott, Fort Worth, Tex., for respondent.

Before McCORD and WALLER, Circuit Judges, and RICE, District Judge.

PER CURIAM.

On August 16, 1949, this Court, on a petition of the N.L.R.B. seeking to have respondent adjudged to be in contempt, made an order providing in part as follows: "Deferring final action, therefore, upon the petition for contempt until there has been further opportunity for bargaining, and enjoining upon respondent and union to proceed in a spirit of moderation and fair play, we hereby direct the respondent to at once initiate a resumption of bargaining with the union in a sincere effort to reach an agreement, union and respondent to be afforded the assistance of the Labor Board when called upon by either or both, a record of the negotiations to be kept and reported to the court for final determination of the contempt proceedings at its next session at Fort Worth on November [24], 1949, with the right of either party hereto to report progress or to apply to the court for further appropriate direction prior to said date." 178 F.2d 344.

Pursuant to the foregoing the respondent has now filed with the Court a statement asserting that it has undertaken in good faith to bargain collectively with the Union and that it has complied with all of the specific directions contained in the previous mandate of this Court.

Attached to its response is a letter dated November 22, 1949, from the General Counsel for the State Federation of Labor of Texas, acting for and on behalf of the Union, to the counsel for respondent, stating that the Union and the Company are apparently in agreement upon all provisions of the proposed contract except Articles V and VI, and that it, the Union, is more interested in securing an agreement than in having the Company cited for contempt. The two articles mentioned in the letter contain suggestions and concessions which counsel advised that the Union was willing to make in reference to the selection of one who would be authorized to name an arbitrator in the event of resort to arbitration between the Company and the Union and in reference to a no-strike agreement wherein there should be a provision for liquidated damages in the event of a strike or a lockout. Appended, also, to respondent's answer is a copy of letter, dated November 23, 1949, from counsel for the Company to counsel for the Union advising that a detailed study was made of the proposals set out in the letter of the 22nd and that an answer would be shortly made thereto. These communications were submitted as evidence of collective bargaining in good faith on the part of the respondent. Full and ready compliance by the Company with the specific provisions of our former order is also offered as evidence of the Company's attempt to bargain in good faith.

It appears to us that the Union and the Company have made considerable progress since our last order in the case and that a number of camels have been swallowed even though there has been some straining at gnats. The Company has persistently refused to agree to anyone who should have the right to name the arbitrator except the District Judge from Navarro County, Texas, wherein the Company's plant is located. The Union, on the other hand, preferring to have as the selector of such arbitrator one less likely to be affected by local influences, has proposed

numerous other persons and officials, including the presidents of various schools and universities, as well as numerous federal judges. It is not for us to say that the suggestions made by the Union are more suitable or appropriate than the official suggested by the respondent, but the fact that the respondent is adamant in insisting upon the one selection proposed by it and in declining to offer any substitute suggestions or to agree to any party suggested by the Union, strongly suggests the absence of good faith on the part of the Company in respect to this matter.

Moreover, the respondent has insisted that the contract contain a provision in the no-strike agreement holding the Union liable not only for strikes by members of the Union but also for strikes by non-Union employees. This position likewise does not tend to enhance the respondent's contention that it has bargained in good faith in all particulars, and were the case to rest solely upon the respondent's position in these two aspects, it would be difficult for it to escape the charge made against it by the Board of lack of good faith in its collective bargaining.

It does appear, however, that on the more substantial phases in controversy, including the no-strike agreement, the parties have made progress in their negotiations and that the prospects are encouraging for the consummation of an early accord between the Union and the Company thereon as evidenced by the letters attached to the response to this proceeding filed by the Company. To that end we feel constrained to defer final action in this proceeding until the 10th day of January, 1950, at which time the respondent is directed to submit to this Court at New Orleans, Louisiana, a report of the status of its negotiations with the Union; meanwhile any adjudication of contempt or any consideration of the imposition of any penalties and costs will be deferred until that time and place.