**TAYLOR FORGE & PIPE WORKS,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD,** Respondent.

No. 11617.

United States Court of Appeals
Seventh Circuit.

June 6, 1956.

Robert W. MacDonald, Henry E. Seyfarth, Lee C. Shaw, Owen Fairweather, Chicago, Ill., for petitioner.

David P. Findling, Associate Gen. Counsel, William J. Avrutis, Atty., National Labor Relations Board, Washington, D. C., Theophil C. Kammholz, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Frederick U. Reel, Attys., National Labor Relations Board, Washington, D. C., for respondent.

Mozart G. Ratner, Jacobs, Kamin & Ratner, Chicago, Ill., for Forge and Machine Workers Industrial Union, amicus curiae.

Before DUFFY, Chief Judge, and MAJOR and FINNEGAN, Circuit Judges.

MAJOR, Circuit Judge.

Petitioner, while engaged in bargaining negotiations with the Forge and Machine Workers Union, the statutory bargaining representative of its employees, refused the Union's request for information as to certain "point ratings" which petitioner used in determining each employee's rate of pay. The Board (with two members dissenting) concluded that the requested information was relevant and essential to the parties' bargaining and that, consequently, petitioner's conduct constituted a refusal to bargain, in violation of Sec. 8(a) (5) and (1) of the Act, Title 29 U.S.C.A. § 158 (a) (5) and (1). The Board's decision, rendered August 16, 1955, required petitioner to cease and desist from refusing to bargain with the Union, and as affirmative relief required petitioner to furnish the Union with the information sought and to post notices with a showing of compliance within ten days.

The case is here on petition of the employer to review and set aside the Board's order. In answer, the Board has requested enforcement.

There is no dispute of consequence as to the evidentiary facts. It is the conclusion which the Board has drawn therefrom that forms the basis of the instant controversy. More specifically, the issue is legal rather than factual. Nevertheless, a statement of the facts in some detail appears essential.

On April 16, 1954, representatives of petitioner and the Union were engaged in a bargaining conference, including the matter of a wage increase sought by the Union. At this conference the Union's attorney requested of petitioner's personnel manager information contained in its files relative to certain factors which petitioner took into consideration in evaluating each job and upon which the salary paid therefor depended. The denial of this request constitutes the basis for the instant controversy.

Petitioner paid its employees, some 238 in number, an hourly wage rate, determined as to each job by the number of "points" assigned to that particular job. It appraised the various factors, each being awarded a certain number of points, and the resulting point total determined the rate per hour to be paid for each job. A separate sheet was used for each job, with a written analysis of the work to be done, together with its physical aspects, on one side, and on the other, an evaluation of the human factors involved and the point ratings which the various factors merited. The side of the sheet listing the physical aspects was headed "Job Description." The other side was headed "Job Rating Sub-

stantiating Data." We need not dwell upon the "Job Description" information for the reason that this was furnished to the Union and is not in dispute. It is the information setting forth the "Job Rating Substantiating Data" which petitioner refused to furnish the Union. On this side of the sheet petitioner recorded the value of each rating factor. For such purpose eleven factors were employed: Education, Experience, Initiative and Ingenuity, Physical Demand, Mental or Visual Demand, Responsibility for Material or Product, Responsibility for Equipment or Process, Responsibility for Safety of Others, Responsibility for Work of Others, Working Conditions and Unavoidable Hazards. In appraising such rating factors petitioner used as its yardstick a Job Rating Manual, issued by the National Metal Trades Association, which defined the factors and prescribed that each be given a rating from 1st to 5th degree. The manual provided for the conditions required for each degree of a given factor, with the point value to be allowed under the degree determined. Rating was made by comparing the written job description against the manual's degree requirements. Petitioner sought to give each job rating factor that degree (from 1st to 5th) and hence that point value which was called for by the job conditions as described.

While the appraisement which petitioner made of these various rating factors is important, we think they need not be discussed in detail, in view of the admission of the parties relative thereto. It is conceded by the Board that some of the factors lend themselves to a rating as to point value capable of ascertainment to a mathematical certainty. On the other hand, certain other factors are not capable of a point evaluation with any degree of certainty. In other words, the evaluation of such factors for the purpose of determining their point value depends upon the experience and judgment of the evaluator. We do not understand that petitioner disagrees with the Board as to the manner in which it

arrives at the point value to be ascribed to the different factors. In its brief it states, "Each described job is evaluated under certain factors according to the judgment of the evaluator who assigns point values to the job to be used in comparing one job and its wage rate with another job and its wage rate." Moreover, petitioner's personnel manager as a witness admitted that the evaluation of some factors calls for a knowledge of the job rating system, familiarity with the job conditions involved and the exercise of a certain amount of judgment.

We think it is hardly open to dispute but that the total point evaluation assigned by petitioner to the eleven involved factors was not only directly related to the pay determined for each job but that it constituted an important consideration in petitioner's entire wage structure. Moreover, petitioner regarded such information as important to the Union in adjusting grievances arising in individual cases. Over a period of nine years of processing such grievances it had disclosed to the Union the "degree" ratings of 95 individual jobs out of a total of 238 in its plant. In fact, it was a company policy and practice to allow not only the Union but also individual employees, upon request and a showing of good reason, an opportunity to examine its evaluation information. Petitioner's personnel manager testified that the disclosure of such information resulted in the disposition of a number of grievances involving the hourly pay rate.

It is contended here, as it was before the Board, that the Union with the information supplied by the company was in as good a position as petitioner to evaluate the involved factors. The testimony of petitioner's personnel manager on this point, however, carried little weight because the witness in attempting to evaluate the points assigned to a certain job came up with a total far short of those which petitioner had previously found such job to merit. This evidently resulted from the fact that the evaluation service for petitioner was performed by a specialist in that field. The witness

had not participated in the rendition of this service and hence was unable to determine the points to which the particular job was entitled. This was because the points assigned to a number of factors depended upon the judgment of the evaluator. It follows that an evaluation by persons equally competent and qualified was calculated to produce different results and consequently the wages determined by petitioner for each job would depend upon such varying judgment.

We think petitioner stresses to its disadvantage the fact that its point evaluation resulted from the exercise of judgment, with the consequent determination of the wage fixed for each job. In our view, the fact that the exercise of judgment is involved increases the area where controversy is likely to result. Petitioner in its brief states, "Surely the law does not require an employer to make such an analytical study for a Union." We assume that the law does not impose such a requirement, in fact, that it does not impose upon an employer the duty of making such a study for itself, but when it does so and its process produces a result upon which its wage structure depends, we are not able to discern any good reason why the Union is not entitled to such information in the course of its bargaining negotiations.

Petitioner also states in its brief, "As a matter of fact, there are many other job evaluation procedures which are available to the Union in analyzing the basic facts which it had in its possession." Assuming this is a correct statement, it begs the issue because any evaluation made by the Union in all probability would have differed from that made by petitioner. Thus, a solution of the controversy arising from the Union's demand for increased wages would have been dependent upon a reconciliation of the differing results obtained by the evaluators for the respective parties. We agree with petitioner that it would be just as reasonable to require the Union upon demand to furnish the employer with its evaluation data as to require the employer to furnish such data to the Union. However, we see no reason why either party to the bargaining process should not furnish the other any relevant data or information in its possession pertinent to the wages determined for a certain job or to the wage structure as a whole.

We agree with the Trial Examiner's statement that "Only full disclosure of [petitioner's] wage structure based on the point values assigned to each factor for all jobs would enable the Union to know whether to press or modify a particular wage demand, whether inequities exist which merit discussion or correction, and whether other elements are present in the wage structure which, though impossible to visualize beforehand, appear to merit discussion once the full picture is available."

As already noted, petitioner deemed it appropriate to supply the information now in controversy in every case where it was relevant to an individual grievance. In this connection the Board stated, "It is clear that if the data is relevant and necessary in the case of individual grievances, it is equally relevant and necessary where the object of the negotiation is to establish broad pay formulas which will eliminate the necessity of filing individual grievances." With this reasoning as applied to the facts of this case we agree.

[2] Many cases are cited and discussed by the parties wherein the courts under a variety of circumstances have held that the Act requires an employer to furnish a union with information relevant to bargaining issues. Some of the more important of such cases are Aluminum Ore Co. v. N. L. R. B., 7 Cir., 131 F.2d 485, 147 A.L.R. 1; N. L. R. B. v. Otis Elevator Co., 2 Cir., 208 F.2d 176; N. L. R. B. v. Whitin Machine Works, 4 Cir., 217 F.2d 593; N. L. R. B. v. Item Co., 5 Cir., 220 F.2d 956, and Boston Herald-Traveler Corp. v. N. L. R. B., 1 Cir., 223 F.2d 58. We think no good purpose could be served in discussing or analyzing these cases. It perhaps is true, as asserted by petitioner, that the

particular information sought by the Union in the instant case has not been involved in any of the court decisions. It is equally true, however, that the courts have announced and applied the general principle that an employer is obligated to furnish the union with data and information relevant to issues about which the parties are obligated to bargain. Typical of such cases is the decision of this court in the Aluminum Ore Co. case, 131 F.2d 485, 487, wherein we stated: "This [referring to the Act] contemplates exchange of information, ideas and theories in open discussion and an honest attempt to arrive at an agreement. * * * In determining what employees should receive increases and in what amounts, it could have been only helpful to have before the bargainers the wage history of the various employees, including full information as to the work done by the respective employees and as to their respective wages in the past, their respective increases from time to time and all other facts bearing upon what constituted fair wages and fair increases."

■ Petitioner, relying upon N. L. R. B. v. American National Insurance Co., 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027, argues that its refusal to furnish the sought information does not in any event constitute a refusal to bargain in good faith. That case, however, is distinguishable from the instant case, as is shown by note 20, page 407 of 343 U.S., page 831 of 72 S.Ct., where it is stated, "This is not the case of an employer refusing to bargain * * * [because of an] erroneous theory * * * of law" as to his bargaining obligation. It has been held in numerous cases that good faith is not open to an employer as a defense to an unfair labor charge based upon its refusal to bargain merely because it entertained an erroneous view of the law. N. L. R. B. v. J. H. Allison & Co., 6 Cir., 165 F.2d 766, 770, 3 A.L.R.2d 990; N. L. R. B. v. Corsicana Cotton Mills, 5 Cir., 178 F.2d 344, 346; N. L. R. B. v. Berkley Machine Works & Foundry Co., Inc., 4 Cir., 189 F.2d 904, 907.

Petitioner raises other questions which we have considered and find without merit. The petition to review and set aside the Board's order is denied. The Board's request for enforcement is allowed and, upon presentation, an appropriate decree will be entered.

FINNEGAN, Circuit Judge (dissenting).

At the administrative level a sharply divided opinion among the Labor Board members demonstrates the real problem in the struggle to interpret and apply the "good faith" yardstick ordered by § 8(a) (5) of the Act. The hard core of this appeal is bared by a portion of the Board's order: " * * * we believe that the evidence clearly establishes the relevancy and essential necessity for the substantiating data requested by the Union * * * it is undisputed that the substantiating data is part of the respondent's job evaluation system * * *." Much is made of the fact that Taylor, petitioner here, agreeably supplies such information concerning its system when the Union processes grievances on specific employees and particular jobs. The information involved is written on the reverse side of petitioner's job description sheets. There is evidence that Taylor supplied the Union with material from which it could make its own evaluation and derive point scores for each job. The examiner reported, for example, " * * * the analysis and interpretation of both the job description and the 'degree' criteria in the N. M. T. A. rating manual depends * * * on the judgment of the evaluator." I eschew the Board's order because it forces Taylor to undergo a test for determining the paternity and intellectual pedigree of its managerial judgments and opinions. The issue before the Board pivoted on "good faith," and an appraisal of Taylor's attitude can be accomplished without forcing production of the "Job Rating Substantiating Data."

I would deny enforcement of the order of the Board.