LOCAL 13, DETROIT NEWSPAPER PRINTING AND GRAPHIC COMMUNICATIONS UNION, INTERNATIONAL PRINTING AND GRAPHIC COMMUNICATIONS UNION, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

Oakland Press, Intervenor.

No. 78–1052.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 3, 1979.

Decided April 9, 1979.

Donald F. Sugerman, Detroit, Mich., with whom Barbara C. Somson, Detroit, Mich., was on the brief, for petitioner.

Michael Messitte, Atty., N.L.R.B., Washington, D.C., a member of the bar of the Court of Appeals of Maryland, pro hac vice by special leave of court, with whom John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and John H. Ferguson, Atty., N.L.R.B., Washington, D.C., were on the brief, for respondent.

Alex B. Shipley, Jr., Nashville, Tenn., was on the brief, for intervenor.

Before BAZELON, TAMM and WILKEY, Circuit Judges.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

Petitioner, Local 13, Detroit Newspaper Printing and Graphic Communications Union (Union), challenges a decision of the National Labor Relations Board (Board) that it violated section 8(b)(3) of the National Labor Relations Act (Act), 29 U.S.C. § 158(b)(3) (1976), by refusing to supply information during contract negotiations.[1] The Board cross-petitions for enforcement of its order requiring the Union to provide the information. We uphold the Board's finding that the information is relevant to meaningful bargaining and that the Union, by failing to furnish it, violated its statutory duty to bargain in good faith.

I

Oakland Press Company (Company), an intervenor in this appeal, publishes and prints a daily newspaper in Pontiac, Michigan. For several years, the Company and the Union have maintained collective bargaining agreements covering the pressroom employees at the Company's plant. The agreement that is the subject of this appeal expired on March 31, 1976. Section 15 of that agreement contained a "manning table" provision which required the Company to employ an established number of workers when certain machinery was in use or when certain operations were necessary. Joint Appendix (J.A.) at 112–13.

In order to comply with the manning table, the Company on occasion, hired additional persons to work on a temporary basis. The Union operated a hiring hall, and sections 2(b) and 9(b) of the agreement set out its obligation to supply the additional employees at straight-time rates. These sections provided as follows:

*Section 2(b)*

In the event that the [Company] hires new or additional employees to fill jobs covered by this agreement, the [Company] agrees to give the Union at least one . . . week's notice of its intention to do so and to consider any persons recommended by the Union for such jobs, along with applicants from any other source. It is agreed that all persons recommended by the Union to the [Company] shall be eligible to work at straight time rates, provided straight time men are available.

*Section 9(b)*

Employees shall not be compelled to work on their off-days or nights if competent substitutes are available in sufficient number at straight time rates to meet the needs of the [Company]. The Union agrees to provide, on a five-day markup basis, competent straight time substitutes, if requested by the [Company], to replace employees on vacation. No employee shall lay off or take a personal day without providing a competent substitute at applicable straight time rates, acceptable to the foreman, except in cases of illness or other [bona fide] emergencies considered adequate by the foreman. The foreman may grant permission to change or trade off-days or nights upon written request from the employees concerned.

*Id.* at 129. In practice, however, the Union consistently recommended regular pressroom employees at overtime rates for the extra work under section 2(b). It referred straight-time workers only as substitutes under section 9(b). *Id.* at 30; Brief for Petitioner at 3–4.

The Company and the Union began negotiating a new collective bargaining agreement in February 1976. The Company was particularly concerned about high overtime costs caused by the Union's failure to recommend, as extra employees, pressroom operators eligible for straight-time pay.[2] In

---

**1.** The opinion and order of the National Labor Relations Board (Board) is reprinted in 233 N.L.R.B. No. 144 (1977).

**2.** Although the referral provisions were nonexclusive and the Company could, at its option, hire either Union hall nominees or independent employees, as a practical matter the Company had to rely solely on Union referrals. Assuming that competent journeymen printers, in fact, were available from a source other than the Union, the requirement set out in section 2(b), *see* text at —— of 194 U.S.App.D.C., 269 of 598 F.2d *supra*, requiring the Company to give the Union one week's notice before employing non-union workers, rendered the ability

an effort to reduce payroll costs, the Company proposed modifications in the referral provisions of sections 2(b) and 9(b). The Company proposed striking the availability proviso contained in the last sentence of section 2(b), thereby guaranteeing that the Union would always supply extra employees at straight-time rates. The Company further suggested changing the first sentence of section 9(b) to preclude employees from working on their off-days or nights "until the union has made a bona fide effort to provide competent substitutes in sufficient numbers at straight time rates to meet the needs of the [Company]." J.A. at 130. This new provision would also require the Union "to provide the [Company], upon demand, information verifying the availability of substitutes in the Union's jurisdiction for any day requested by the [Company]." *Id.* The Union was unwilling to agree to these proposals and sought to maintain overtime opportunities for regular employees. Brief for Petitioner at 5.

Contract negotiations continued until the summer months and resumed again in the fall. The central point in dispute was the Company's proposed revisions of sections 2(b) and 9(b). During bargaining sessions on October 4 and 19, 1976, the Company orally requested, as bargaining information, data on the availability of personnel eligible to work at straight-time rates. The Union refused to provide the information. On October 20, 1976, the Company presented the Union with a formal, written request for bargaining information relating to sections 2(b) and 9(b) of the agreement. Specifically, the letter demanded the following:

1. Data covering the availability of straight-time help during the last six . . . calendar months. If such data is unavailable, please respond in writing the reasons why.

2. During our collective bargaining session of 10–19–76, you stated that there are in existence lists which document just

who is available for straight-time work. Please preserve and send . . . as they become available, six lists for each day for the next six . . . weeks.

3. Please furnish . . . the name of the individual at your Local who is responsible for compiling and maintaining said lists and the administration of furnishing subs and extras.

4. Please furnish in writing an explanation of how Local 13 handles requests for men.

J.A. at 131. The Union failed to comply with this request.

On November 4, 1976, the Company filed an unfair labor practice charge with the Board. On December 10, 1976, the Regional Director of the Seventh Region of the Board issued a complaint alleging a violation of section 8(b)(3) of the Act. The case was brought before an administrative law judge (ALJ) who dismissed the complaint in its entirety. The ALJ found that the Union flatly and in good faith rejected the Company's proposals to revise sections 2(b) and 9(b). *Id.* at 127. He ruled that, absent a claim by the Union of inability to supply the desired workers at straight-time rates, the information requested was not relevant or necessary to the bargaining process. *Id.* The Board reversed, ruling that the desired information was relevant and necessary to meaningful bargaining and that the Union violated section 8(b)(3) of the Act when it refused disclosure. *Id.* at 135. This appeal followed.

## II

Under section 8(b)(3) of the Act, it is an unfair labor practice for a union to refuse to bargain collectively with an employer. This obligation parallels an employer's duty to bargain collectively under section 8(a)(5) of the Act, 29 U.S.C. § 158(a)(5) (1976). Section 8(d) of the Act, 29 U.S.C. § 158(d) (1976),[3] defines a union's duty to

to hire independents illusory. Because of the spontaneous nature of news, a printer is often unable to predict its manning requirements a week in advance.

3. Section 8(d) of the Act, 29 U.S.C. § 158(d) (1976), in pertinent part provides:

For the purposes of this section, to bargain collectively is the performance of the mutual

bargain collectively as including the obligation to "confer in good faith." *See NLRB v. Insurance Agents' International Union,* 361 U.S. 477, 487–88, 80 S.Ct. 419, 4 L.Ed.2d 454 (1960). It is well settled that an employer's duty to confer in good faith includes the duty to supply the union with requested information that will enable it to negotiate effectively and to perform properly its other duties as bargaining representative.[4] *See, e. g., Detroit Edison Co. v. NLRB,* — U.S. —, 99 S.Ct. 1123, 59 L.Ed.2d 333 (1979); *NLRB v. Acme Industrial Co.,* 385 U.S. 432, 435–36, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967); *NLRB v. Truitt Manufacturing Co.,* 351 U.S. 149, 153, 76 S.Ct. 753, 100 L.Ed. 1027 (1956); *International Union, UAW v. NLRB,* 147 U.S.App.D.C. 289, 298, 455 F.2d 1357, 1366 (D.C.Cir. 1971). The union is likewise obliged to furnish the employer with relevant information. *See Taylor Forge & Pipe Works v. NLRB,* 234 F.2d 227, 230 (7th Cir. 1956) (dicta); *Tool & Die Makers Lodge No. 78,* 224 N.L.R.B. 111 (1976) (assumed without deciding).

A broad disclosure rule is crucial to full development of the role of collective bargaining contemplated by the Act. Unless each side has access to information

enabling it to discuss intelligently and deal meaningfully with bargainable issues, effective negotiation cannot occur. *See General Electric Co. v. NLRB,* 466 F.2d 1177, 1183 (6th Cir. 1972); *Curtiss-Wright Corp. v. NLRB,* 347 F.2d 61, 68 (3d Cir. 1965); *Southern Saddlery Co.,* 90 N.L.R.B. 1205, 1207 (1950). Accordingly, the standard for assessing the relevancy of requested information to a bargainable issue is a liberal one, much akin to that applied in discovery proceedings.[5] *See NLRB v. Acme Industrial Co.,* 385 U.S. at 437 & n.6, 87 S.Ct. 565; *NLRB v. Rockwell-Standard Corp.,* 410 F.2d 953, 958 (6th Cir. 1969); *NLRB v. Yawman & Erbe Manufacturing Co.,* 187 F.2d 947, 949 (2d Cir. 1951) (per curiam); R. Gorman, Labor Law 410 (1976). Under the Federal Rules of Civil Procedure governing discovery,[6] "relevancy is synonymous with 'germane'"; and a party must disclose information if it has any bearing on the subject matter of the case. C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2008 at 48 (1970); *see id.* at 46–47; 4 Moore's Federal Practice ¶ 26.56[1] at 26–120 to 26–124, 26–131 & n.34 (relevancy means matter pertinent to anything that it or may be an issue in the litigation). Any

---

obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession.

4. The duty to disclose relevant information applies not only in the negotiation of a collective bargaining agreement, but in its administration as well. *See NLRB v. Acme Indus. Co.,* 385 U.S. 432, 435–36, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967); *P. R. Mallory & Co. v. NLRB,* 411 F.2d 948, 953 (7th Cir. 1969).

5. Some information is considered so central to the "core of the employer-employee relationship" that it is deemed presumptively relevant. A request for such data must be honored and, unless the employee specifically demonstrates a lack of relevancy, refusal to disclose constitutes a violation of the duty to bargain in good

faith. *See, e. g., NLRB v. Rockwell-Standard Corp.,* 410 F.2d 953, 957 (6th Cir. 1969); *International Tel. & Tel. Corp. v. NLRB,* 382 F.2d 366, 372 (3d Cir. 1967), *cert. denied,* 389 U.S. 1039, 88 S.Ct. 777, 19 L.Ed.2d 829 (1968); *Curtiss-Wright Corp. v. NLRB,* 347 F.2d 61, 68–69 (3d Cir. 1965). With respect to requests for information not ordinarily central to performance of bargaining duties, however, the requesting party must make a showing of relevancy based on particular circumstances. *See, e. g., NLRB v. Acme Indus. Co.,* 385 U.S. at 437, 87 S.Ct. 565; *NLRB v. Truitt Mfg. Co.,* 351 U.S. 149, 152–53, 76 S.Ct. 753, 100 L.Ed. 1027 (1956); *NLRB v. Goodyear Aerospace Corp.,* 388 F.2d 673, 674 (6th Cir. 1968) (per curiam); *Curtiss-Wright Corp. v. NLRB,* 347 F.2d at 69. Although the burden of proving relevancy or the lack thereof shifts, depending upon the type of information sought, the ultimate standard remains constant.

6. Rule 26(b)(1) of the Federal Rules of Civil Procedure states: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action  .  .  .  .  ."

less lenient rule in labor disputes would hamper the bargaining process.

## III

The Union does not dispute that it is obliged to furnish to the Company information relevant to bargainable issues. Rather, it contends that data concerning the availability of straight-time workers is neither relevant nor necessary to "intelligent negotiation" of the contract. Brief for Petitioner at 15. We disagree.

At the outset, we comment on the parameters of our review. Determining whether a party has violated its duty to "confer in good faith" is a mixed question of law and fact that requires specific application of a broad statutory standard to the particular facts of the case. *See San Diego Newspaper Guild v. NLRB*, 548 F.2d 863, 867 (9th Cir. 1977); *International Union, UAW v. NLRB*, 147 U.S.App.D.C. at 296–97, 455 F.2d at 1364–65; R. Gorman, Labor Law 13. The issues raised in this context are "delicate" ones, particularly within the expertise of the Board. *International Union, UAW v. NLRB*, 147 U.S.App.D.C. at 296, 455 F.2d at 1364. Accordingly, we pay great deference to the Board's decision; and must affirm if it is supported in the record and reasonably based in law. *See San Diego Newspaper Guild v. NLRB*, 548

F.2d at 867; *NLRB v. Whitin Machine Works*, 217 F.2d 593, 595 (4th Cir. 1954) (per curiam), *cert. denied*, 349 U.S. 905, 75 S.Ct. 583, 99 L.Ed. 1242 (1955); *see generally NLRB v. Hearst Publications, Inc.*, 322 U.S. 111, 130–31, 64 S.Ct. 851, 88 L.Ed. 1170 (1944).

The Union argues that because it never took the position during contract negotiations that it was *unable* to furnish straight-time help, the requested data was neither relevant nor necessary [7] to meaningful bargaining. It contends, therefore, that the Board erred in finding that it violated section 8(b)(3) by failing to comply with the Company's demand. The Union refers us to *NLRB v. Truitt Manufacturing Co.*, 351 U.S. 149, 76 S.Ct. 753, 100 L.Ed. 1027. In *Truitt*, the Supreme Court held that an employer who claims financial inability to pay a wage increase must give the union sufficient information to substantiate its claim. In so ruling, the Court rejected the employer's claim that the data was irrelevant. *Id.* at 151, 153, 76 S.Ct. 753. The Court did not hold, however, as the Union implies, that a claim of inability to meet a demand is necessary before information related to that demand is deemed relevant. Rather, the Court specifically stated that the duty to disclose will always depend on the "circumstances of the particular case." *Id.* at 153, 76 S.Ct. 753; *see Detroit Edison*

---

7. The Union seems to argue that necessity is an additional standard, separate from that of relevancy, which the Company must meet to obtain disclosure. Brief for Petitioners at 7, 14–15. While we recognize that some cases do suggest that information sought must not only be relevant to the task of bargaining, but must also be necessary, *see United Aircraft Corp. v. NLRB*, 434 F.2d 1198, 1204–07 (2d Cir. 1970), *cert. denied*, 401 U.S. 933, 91 S.Ct. 1232, 28 L.Ed.2d 531 (1971), the greater weight of authority seems to support the proposition that the requesting party need only demonstrate that the information is relevant to the negotiation of the contract. *See* R. Gorman, Labor Law 410 (1976). In *Curtiss-Wright Corp. v. NLRB*, 347 F.2d at 68, for example, the Third Circuit stated that "if the requested data is relevant [it is] therefore reasonably necessary." The court explained "[r]easonable necessity . . . to have relevant data is apparent; necessity is not a separate and unique guideline, but is directly related to the relevance of

the requested data." *Id.* at 69. In *NLRB v. Acme Indus. Co.*, 385 U.S. 432, 87 S.Ct. 565, 17 L.Ed.2d 495, the Supreme Court appeared to construct a similar equation. Although it adverted to the duty to disclose "information that is needed," *id.* at 435, 87 S.Ct. 565, it sustained the Board's action in that case "upon the probability that the desired information was relevant" and "would be of use," *id.* at 437, 87 S.Ct. at 568.

We are disposed to view the matter as one that evades rigid line-drawing, turning more appropriately upon the facts of the particular case under review. In some instances, the concepts of relevancy and necessity may, indeed, merge indistinguishably; whereas in others, they may remain distinct. We need not, however, pursue the issue further. Whether the criteria are separable or not, the Company has shown a "specific need" for the information in this case. *See* text at —— —— of 194 U.S. App.D.C., 273 of 598 F.2d *infra*.

*Co. v. NLRB,* —— U.S. at ——, 99 S.Ct. 1123.

■ We hold that in "the circumstances of [this] particular case," the Board correctly characterized the information sought by the Company as "clearly relevant and necessary" to the bargainable issues. J.A. at 133. As the Board explained in its order, detailed information, in the sole custody of the Union, on referral procedures and the availability of straight-time workers is vital to intelligent evaluation by the Company of the practices under the past agreement, the practicality of its suggested modifications, and the development of alternate proposals or compromises. *Id.* at 133–34. Simply because the Union does not claim an inability to supply straight-time workers does not mean that availability problems are non-existent. Section 2(b) of the prior agreement, *see* text at —— of 194 U.S.App.D.C. 269 of 598 F.2d *supra,* in fact contemplates the possibility of a shortage of straight-time help.

Only with the requested information could the Company decide whether to stand firm on its proposals and risk a strike, modify them to induce some Union acquiescence on the subject of straight-time referrals, or abandon them. *See J. I. Case Co. v. NLRB,* 253 F.2d 149, 155 (7th Cir. 1958) (information necessary " 'to know whether to press or modify a particular . . . demand, whether inequities exist which merit discussion or correction, and whether other elements are present . . . which, though impossible to visualize beforehand, appear to merit discussion once the full picture is available' ") (quoting *Taylor Forge & Pipe Works v. NLRB,* 234 F.2d at 230); *Boston Herald-Traveler Corp. v. NLRB,* 223 F.2d 58, 61–62 (1st Cir. 1955); *see also Connecticut Light & Power Co.,* 220 N.L.R.B. 967, 967–68 (1975), *enforced without opinion,* 538

F.2d 308 (2d Cir. 1976) (information on past retiree benefits would enable union "to make an objective determination as to whether to pursue [its] cost-of-living proposal or withdraw it").

The desired information is relevant to a hotly contested bargaining issue concerning referral of straight-time workers. The Union's refusal to supply the data precludes intelligent evaluation by the Company of its proposals as well as the Union's position.[8] The Union's reliance on *Truitt* is thus unavailing. The particular circumstances of this case warrant disclosure, and the Board's decision is completely consistent with Supreme Court precedent.[9]

■ The Union's apparent argument that its insistence on maintenance of present referral practices vitiates the relevancy of the information belies a serious misapprehension about the nature of the collective bargaining process. The mere fact that the Union *now* refuses to yield does not mean it never will. Parties commonly change their position during the course of bargaining notwithstanding the adamance with which they refuse to accede at the outset. Effective bargaining demands that each side seek out the strengths and weaknesses in the other's position. To this end, compromises are usually made cautiously and late in the process. *See generally F. A. Reynolds Co.,* 173 N.L.R.B. 418, 424 (1968), *enforced,* 424 F.2d 1068 (5th Cir. 1970) (per curiam).

### IV

For the foregoing reasons, we find that the Board properly ruled that the information requested from the Union is relevant to intelligent bargaining and that the Union's failure to comply with the Company's demand for the information constitutes a violation of its statutory duty to bargain in

---

**8.** The requested information would also allow the Company to predict its projected overtime costs over the term of the new contract and is therefore relevant to the negotiation of a wage package. *See* Joint Appendix at 134.

**9.** The Union's analogy to *Truitt* if further flawed by its failure to demonstrate any confi-

dentiality interest in the information corresponding to that of the employer in *Truitt.* Although pressing the analogy throughout this proceeding, the Union refused to explain how it will be harmed by disclosure. *See Detroit Edison Co. v. NLRB,* —— U.S. ——, at —— – ——, 99 S.Ct. 1123, 59 L.Ed.2d 333 (1979).

274

good faith. The order of the Board is therefore

*Affirmed.*