629 F.2d 1320
 105 L.R.R.M. (BNA) 3046, 89 Lab.Cas. P 12,320
 PRESS DEMOCRAT PUBLISHING CO., Times Herald, Inc., Amphlett
Printing Company, and Brown Newspaper Publishing
Co., Inc., Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
SAN FRANCISCO-OAKLAND NEWSPAPER GUILD, LOCAL 52, the
Newspaper Guild, AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 Nos. 79-7086 to 79-7089 and 79-7158 to 79-7161.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 10, 1980.
Decided Oct. 8, 1980.
 
 James E. Boddy, Jr., Irwin Leff, San Francisco, Cal., argued, for petitioners; James C. Paras, Irwin Leff, San Francisco, Cal., on brief.
 W. Christian Schumann, NLRB, Washington, D. C., argued, for respondent; Elliott Moore, Washington, D. C., on brief.
 Petitions for Review and Cross-Applications for Enforcement of Orders of National Labor Relations Board.
 Before WRIGHT, KENNEDY and POOLE, Circuit Judges.
 POOLE, Circuit Judge.
 
 
 1
 At issue here are four decisions of the National Labor Relations Board (the Board) involving nearly identical factual and legal questions. The dispute concerns the editorial departments of four publishing companies: Press Democrat Publishing Co.; Times-Herald, Inc.; Amphlett Printing Co.; and Brown Newspaper Publishing Co. (collectively, the "Employers"), which publish several suburban newspapers in the Bay Area. The San Francisco-Oakland Newspaper Guild (the Guild) represents full-time, salaried employees of the four companies who produce editorial copy for the newspapers.
 
 
 2
 In each of its decisions,[1] the Board ordered the publishing company to disclose to the Guild aggregate amounts paid to independent correspondents for editorial product. The Board found this information relevant to the Guild's wage demands for union members and that failure to disclose it violated the duty to bargain in good faith imposed by the National Labor Relations Act (the Act), 29 U.S.C. §§ 151, et seq.
 
 
 3
 The Employers have petitioned for review, challenging the disclosure orders and findings of violations of the Act. The Guild seeks review on the basis that individual rather than aggregate payments should be disclosed. The Board has cross-petitioned for enforcement of its orders without modification.
 
 BACKGROUND
 
 4
 For at least twenty years, the Employers have utilized independent correspondents,[2] not represented by the Guild, to write special interest or local news columns. These nonunit correspondents perform work similar to that of bargaining unit editorial employees, but are paid on per article or monthly retainer bases, rather than by the hour. The Employers' use of correspondents has not in the past reduced the work or wages of unit employees. The Guild has not contended that this practice violates the collective bargaining agreements, but has in prior contract negotiations unsuccessfully proposed unit work protection clauses and minimum wage clauses for nonunit workers.
 
 
 5
 In preparation for negotiations on the 1976-78 contract, the Guild wrote to the Employers on August 5, 1976, requesting identification of each published article written by a nonunit correspondent during a specified period, and of the amount paid for each item. The letter explained that the information was needed to evaluate contract provisions protecting bargaining unit work and to negotiate minimum terms for nonunit work. The Employers refused to comply with this request on the grounds that the information was confidential and irrelevant to any bargaining purpose.
 
 
 6
 On October 7, 1976, the Guild filed unfair labor practice charges against all four Employers for refusal to furnish information needed to bargain collectively. A single Administrative Law Judge (ALJ) conducted hearings on these charges. On the issue of relevance, the Guild's witness Cuthbertson testified in each hearing that the Guild intended to use the data for comparison to unit employees' wages.[3] In the Press Democrat, Times-Herald and Brown Publishing hearings, the ALJ found an obvious connection, where unit and nonunit personnel performed the same type of work, between information on compensation paid to correspondents and the Guild's unit wage proposals.
 
 
 7
 In the Amphlett hearing, held several months after the other three, Cuthbertson testified that the Guild might also use the compensation information to obtain a larger share of the editorial budget.[4] He explained that the piece rate compensation of correspondents could not be converted into hourly rates for direct comparison with unit wages.[5] He also testified that rough comparison, a determination of whether payment to correspondents represented a high or low price, was nevertheless possible.[6] Based on this testimony, the ALJ came to the opposite conclusion than in the other three cases and declined to recommend disclosure. He determined that the information would not be useful, since direct comparison of hourly rates was impracticable, and found Cuthbertson's testimony on relevance of budget figures unpersuasive.
 
 
 8
 The Board, however, in all four cases found the information relevant for the purpose of formulating unit wage proposals. In reversing the ALJ in Amphlett, the Board concluded that difficulty in converting piece rate compensation to hourly wages was countered by the Guild's interest in budget figures. Construing Cuthbertson's testimony as a request for either individual figures or budget data, the Board ordered the Employers to disclose the aggregate amount paid for nonunit editorial product. Disclosure of correlated compensation information was not ordered in order that individuals' salaries could remain confidential.
 
 DISCUSSION
 A.
 
 9
 It has long been established that the obligation to bargain collectively in good faith includes an employer's duty to furnish information which the union needs to carry out its statutory duties and responsibilities, N. L. R. B. v. Truitt Mfg. Co., 351 U.S. 149, 156, 76 S.Ct. 753, 757, 100 L.Ed. 1027 (1956); N. L. R. B. v. Acme Industrial Co., 385 U.S. 432, 435-36, 87 S.Ct. 565, 567, 17 L.Ed.2d 495 (1967), that is, "sufficient information to enable the (union) to understand and intelligently discuss the issues raised in bargaining permitted by the collective bargaining contract." San Diego Newspaper Guild v. N. L. R. B., 548 F.2d 863, 866 (9th Cir. 1977). Failure to disclose such information constitutes a violation of §§ 8(a)(5) and (1) of the Act, 29 U.S.C. §§ 158(a) (5) and (1). N. L. R. B. v. Silver Spur Casino, 623 F.2d 571, 583 (9th Cir. 1980, as amended July 14, 1980); Truitt Mfg. Co., supra.
 
 
 10
 The first question in a disclosure case is one of relevance; information must be divulged only if it is relevant to a legitimate union need. San Diego Newspaper Guild, supra, 548 F.2d at 867; Emeryville Research Center v. N. L. R. B., 441 F.2d 880, 883 (9th Cir. 1971). "Relevant" information is related to the union's function as bargaining representative and reasonably necessary to performance of that function. Curtiss-Wright Corp. v. N. L. R. B., 347 F.2d 61, 68 (3d Cir. 1965); Proctor & Gamble Mfg. Co. v. N. L. R. B., 603 F.2d 1310, 1315 (8th Cir. 1979); San Diego Newspaper Guild, supra, 548 F.2d at 867 n.7.
 
 
 11
 A dichotomy has developed between data bearing directly on mandatory bargaining subjects and other kinds of information. Information in the first category, pertaining to wages, hours or conditions of employment, is presumptively relevant, and must be disclosed unless the employer proves a lack of relevance. San Diego Newspaper Guild, supra, 548 F.2d at 867; Western Massachusetts Electric Co. v. N. L. R. B., 573 F.2d 101, 105 (1st Cir. 1978). On the other hand, when information not ordinarily pertinent to collective bargaining, such as information concerning nonunit employees, is requested by a union, relevance is not assumed. Instead the union must affirmatively demonstrate relevance to bargainable issues. San Diego Newspaper Guild, supra, 548 F.2d at 867-68; Prudential Insurance Co. of America v. N. L. R. B., 412 F.2d 77, 84 (2d Cir. 1969), cert. denied, 396 U.S. 928, 90 S.Ct. 263, 24 L.Ed.2d 226 (1969); Curtiss-Wright Corp., supra, 347 F.2d at 69.
 
 
 12
 The Employers attack the legal standard for relevancy applied by the Board in the instant case, urging that when information on nonunit personnel is sought case law requires overt action by the employer or a showing of necessity as a distinct element of relevance. Relevance depends, however, on the particular facts of each case, Truitt Mfg. Co., supra, 351 U.S. at 153, 76 S.Ct. at 756, and may arise without an issue being placed into contention by specific conduct of the employer. E. g., Connecticut Light and Power Co., 220 NLRB 967 (1975), enforced, 538 F.2d 308 (2d Cir. 1976); N. L. R. B. v. Davol, Inc., 597 F.2d 782 (1st Cir. 1979); Ohio Power Co., 216 NLRB 987 (1975), enforced, 531 F.2d 1381 (6th Cir. 1976). The argument that necessity constitutes a separate guideline has been squarely rejected. Curtiss-Wright Corp., supra, 347 F.2d at 69.
 
 
 13
 The Employers also challenge what they describe as the Board's use of a liberal, "discovery-type" standard of relevancy, relying on language in Acme Industrial Co., supra, 385 U.S. at 437, 87 S.Ct. at 568. They argue that the Board has misconstrued Acme Industrial and that a heightened standard of relevance should apply to nonunit information. Their construction of Acme Industrial comes too late; Courts of Appeal have long and consistently applied this "liberal" standard of relevancy. E. g., Davol, Inc., supra, 597 F.2d at 787 (1st Cir.); N. L. R. B. v. Temple-Eastex, Inc., 579 F.2d 932 at 937-38 (5th Cir. 1978); General Electric Co. v. N. L. R. B., 466 F.2d 1177, 1183 (6th Cir. 1972); Proctor & Gamble, supra, 603 F.2d at 1315 (8th Cir.); Local 13, Detroit Newspaper Printing and Graphic Communications Union v. N. L. R. B., 598 F.2d 267, 271 n.5 (D.C.Cir.1979).[7] Exchange of a broad range of information would seem to further the statutory policy of facilitating meaningful collective bargaining. See San Diego Newspaper Guild, supra, 548 F.2d at 866-67; Proctor & Gamble, supra, 603 F.2d at 1315. We think such a standard should apply equally in all cases, although as to nonunit information the burden of proof shifts to the union to show relevance to a bargainable issue. Curtiss-Wright Corp., supra, 347 F.2d at 69; Prudential Insurance Co., supra, 412 F.2d at 84; Local 13, Detroit Newspaper Printing and Graphic Communications Union, supra, 598 F.2d at 271 n.5.[8]
 
 B.
 
 14
 Here the Board found that the nonunit compensation data was relevant and potentially helpful to the Guild in framing unit wage demands, a subject of mandatory bargaining.[9] The determinative factor was the similarity of work performed by unit and nonunit workers: nonunit correspondents furnish editorial material to the same employer and perform editorial functions virtually identical to those of unit editorial employees. The Board concluded that, particularly during negotiations for a new contract, the relevance of data on differences in compensation paid to such correspondents was obvious. The Board noted in addition that the Guild was pursuing a legitimate and long-felt concern over the use of nonunit correspondents to produce "unit work."[10]
 
 
 15
 Since the Board applied the correct legal standard, the issue is whether its conclusion of relevancy is supported by the record.
 
 
 16
 (T)he Board's determination as to whether the requested information is relevant in a particular case is given great weight by the courts either because it is a finding of fact, which is conclusive if supported by substantial evidence, or because it is a finding on a mixed question of law and fact which is within the particular expertise of the Board.
 
 
 17
 San Diego Newspaper Guild, supra, 548 F.2d at 867; N. L. R. B. v. Brazos Electric Power Cooperative, Inc., 615 F.2d 1100, 1101 (5th Cir. 1980). We see no reason to disturb the Board's conclusion that relevance is established in this case by the relatively unusual situation in which nearly identical work is being performed by unit and nonunit personnel, and consequently we affirm the Board's determination.[11]
 
 C.
 
 18
 We now consider the Board's disclosure order. In Times-Herald, the first case it decided, the Board adopted the ALJ's order with the modification that the compensation be identified as to specific columns, not necessarily particular individuals. In Amphlett, however, after reversing the ALJ's relevancy determination, the Board ordered disclosure of only the aggregate amount paid for nonunit contributions of editorial product.
 
 
 19
 This change in remedy remained unexplained until the Board upon the Guild's motion for clarification modified its order in Times-Herald to comport with Amphlett.[12] The Board stated that the modified order was necessary to permit the compensation paid to individual correspondents to "remain confidential as between this employer and said writers." Over the Guild's protest, the Board limited disclosure to aggregate payments, concluding that Cuthbertson's mention of budget totals was, in effect, an alternative request and that the Guild had failed to establish why such totals would not be useful.
 
 
 20
 The Board has broad discretion in fashioning decrees to remedy violations of the Act, N. L. R. B. v. Seven Up Bottling Co., 344 U.S. 344, 346, 73 S.Ct. 287, 288, 97 L.Ed. 59 (1953), because "the relation of remedy to policy is peculiarly a matter for administrative competence." Phelps Dodge Corp. v. N. L. R. B., 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271 (1941). The Board is not however granted a "blank check for arbitrary action", and its orders are reviewed under an abuse of discretion standard. Detroit Edison Co. v. N. L. R. B., 440 U.S. 301, 316, 99 S.Ct. 1123, 1131, 59 L.Ed.2d 333 (1979). In the instant case we are unable to determine if the Board properly exercised its discretion due to inconsistencies and lack of adequate explanation in the Board's reasoning.
 
 
 21
 A union's interest in relevant information is not always paramount, and a remedy may be conditioned to accommodate an employer's interest in confidentiality. Detroit Edison Co., supra, 440 U.S. at 318, 99 S.Ct. at 1132. On the other hand, the alleged confidentiality of relevant economic data cannot serve as a total bar to disclosure. General Electric Co., supra, 466 F.2d at 1185; Curtiss-Wright Corp., supra, 347 F.2d at 71. Upon a clear showing of need for confidentiality, courts have found less than complete disclosure justified. E. g., Detroit Edison Co., supra (aptitude test questions, where "secrecy concededly critical"); Emeryville Research Center, supra (merit ratings; alternative form of disclosure should have been explored); Shell Oil Co. v. N. L. R. B., 457 F.2d 615 (9th Cir. 1972) (identity of nonstriking workers; company showed clear and present danger of harassment).
 
 
 22
 The Board here seems to have determined that the Employers' interest in confidentiality outweighed the Guild's interest in correlated wage data. The Board's apparent finding of confidentiality fails to provide a sufficient basis for review. The ALJ made no finding of fact on the subject of confidentiality in any of his four decisions, and the record contains no factual support for a conclusion that confidentiality was a legitimate concern of the several Employers.
 
 
 23
 An additional problem is that the Board's decisions do not indicate any examination of alternative methods of collecting and disclosing data, which would be protective of confidentiality. Access to relevant information should not be denied without exploration of such choices. See Emeryville Research Center, supra. The Boards' explanation of its remedy in the second Times-Herald case is confusing.
 
 
 24
 Rather than speculate on the Board's justification for modifying the Guild's right to disclosure in response to the Employers' purported need for confidentiality, we remand for clarification. Cf. Detroit Edison Co., supra, 440 U.S. at 316-17, 99 S.Ct. at 1131. While the Board may have correctly balanced the competing interests of the parties involved, we have insufficient basis upon which to review its assessment.
 
 
 25
 REMANDED.
 
 
 
 [1]
 The decisions are reported as follows: Times-Herald, Inc., 237 NLRB No. 135 (1978), modified, 240 NLRB No. 56 (1979); Amphlett Printing Co., 237 NLRB No. 139 (1978); Press Democrat Publishing Co., 237 NLRB No. 216 (1978), corrected, 237 NLRB No. 216 A (1979); Brown Newspaper Publishing Co., 238 NLRB No. 187 (1978)
 
 
 [2]
 The number of correspondents used by an Employer varied from two to thirty-four
 
 
 [3]
 For example, in the Press Democrat hearing, Cuthbertson stated:
 We're also bargaining on the subject of salaries for bargaining unit members, and to the extent their kind of work is done by other persons for any given amount of money, it influences our thinking on what we propose for their salaries. (Reporter's Transcript at 42; Appeal No. 79-7086, NLRB Docket No. 20-CA-12015.)
 The Guild mentioned unit wage demands as the basis for its request prior to the hearing only to Times-Herald, in a letter dated March 2, 1977.
 
 
 [4]
 Cuthbertson was questioned about usefulness of the information on direct examination:
 Q. Is the information you are requesting relevant to any other subject of bargaining?
 A. Well, it's relevant to the Guild's wage goals with respect to the bargaining unit. The employer is putting out a given amount of money for editorial material on this newspaper, which, to us, represents a pie. When we see thirty-three people outside the bargaining unit, or thirty-four, as opposed to only thirty-two people now in the bargaining unit, and they're sharing a piece of that pie, we're very concerned.
 We want to increase wages within the bargaining unit. If we can get that money that they're putting outside the bargaining unit now, it can affect our wage goals within the bargaining unit. (Reporter's Transcript at 52-53, Appeal No. 79-7088, NLRB Docket No. 20-CA-12016).
 
 
 [5]
 Cuthbertson testified:
 A. Well, if you gave us what we asked for, we would know that to produce a given piece of editorial material for one column, for example, you paid so much money. It would be a figure intelligible by what it was that was paid for. No, we would have no way to know how many hours that individual spent producing it; we would only know how much you paid for that editorial product. (Reporter's Transcript at 60-61, Appeal No. 79-7088, NLRB Docket No. 20-CA-12016).
 
 
 [6]
 When asked about the usefulness of the information given the difficulty of conversion of the data, he explained:
 A. Anyone who's familiar with the newspaper business, has negotiated with it, and has ever worked in it is pretty damn familiar with what amount of effort and time is required to produce a column. If you tell us that you pay "X" amount of money for a column, it's not an unintelligible figure to someone who is familiar with that background. We know how much time it takes to produce a column and what effort it takes, and we know whether that's a low price or a high price. (Reporter's Transcript at 62, Appeal No. 79-7088, NLRB Docket No. 20-CA-12016).
 
 
 [7]
 See also San Diego Newspaper Guild, 548 F.2d 863, 867 n.7 (9th Cir. 1977), and K-Mart Corp. v. N. L. R. B., 626 F.2d 704, 706 (9th Cir. 1980)
 
 
 [8]
 The Employers also argue that since they were not apprised of the Guild's intention to use the information in framing wage demands prior to the hearing except in Times-Herald, they cannot be charged with a violation of the Act. The law of this issue is to the contrary. See N. L. R. B. v. Brazos Electric Power Cooperative, Inc., supra, n.10, 615 F.2d at 1102; Proctor & Gamble Mfg. Co. v. N. L. R. B., 603 F.2d 1310, 1315 (8th Cir. 1979). In this circuit, a finding of violation is precluded only by "(p)resentation of bona fide concerns by the company, coupled with reasonable proposals designed to satisfy the needs of the Union . . . ." Shell Oil Co. v. N. L. R. B., 457 F.2d 615, 620 (9th Cir. 1972). In light of our disposition of this case, however, a decision on this argument would be premature
 
 
 [9]
 The Board affirmed the ALJ's rejection of disclosure for the purpose of negotiating a wage rate for nonunit workers since this issue was not a subject of mandatory bargaining absent a history of encroachment on unit work. Nonunit information need not be divulged unless relevant to a bargainable issue. San Diego Newspaper Guild, supra n.7, 548 F.2d at 867-68
 
 
 [10]
 The Board's analysis of relevancy appears in Times-Herald, Inc., 237 NLRB No. 135, and Amphlett Printing Co., 237 NLRB No. 139, both decided August 25, 1978
 
 
 [11]
 The Board's disagreement with the ALJ in the Amphlett case does not lessen our deference, so long as it is not based on credibility issues. N. L. R. B. v. Pacific Grinding Wheel Co., Inc., 572 F.2d 1343, 1347 (9th Cir. 1978); N. L. R. B. v. Brazos Electric Power Cooperative, Inc., 615 F.2d 1100, 1101-02 (5th Cir. 1980). In arriving at a contrary conclusion in Amphlett, the Board decided that the ALJ had misapplied a prior Board decision and had emphasized only portions of Cuthbertson's testimony. The Board thus did not stray from its own primary responsibility of arriving at a legal conclusion from the facts presented. See Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 495, 71 S.Ct. 456, 468, 95 L.Ed. 456 (1951)
 
 
 [12]
 Supplemental decision in Times-Herald, Inc., 240 NLRB No. 56 (1979)